**Grace S. PYLE, a disabled adult, by Carolyn STRAUB, Successor Guardian of her Estate, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 82–3235.

United States District Court, C.D. Illinois, Springfield Division.

Jan. 30, 1984.

R.E. Dehen, Melvin Routman, Robert Magill, Springfield, Ill., for plaintiff.

Gerald D. Fines, U.S. Atty., Richard N. Cox, Asst. U.S. Atty., Springfield, Ill., Steven Toscher, Stephen T. Lyons, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## ORDER

J. WALDO ACKERMAN, Chief Judge.

This case concerns Plaintiff's complaint seeking a return of gift taxes. Plaintiff is a guardian of Grace Pyle, a disabled adult. Grace and Homer Pyle executed a joint and mutual will on November 29, 1973. The will contained, among other things, these clauses:

Third: I, Homer V. Pyle, hereby will, give, devise and bequeath, all of my property, both personal and real or mixed, and wheresoever situated, to my wife, Grace S. Pyle, in fee simple.

Fourth: I, Grace S. Pyle, hereby will, give, devise and bequeath unto my husband, Homer V. Pyle, all of my property, both personal, real or mixed, and wheresoever situated to be his in fee simple.

The will also provided for a detailed disposition of the property on the death of the surviving spouse.

Homer Pyle died on March 27, 1978. On December 27, 1978, Grace Pyle's attorney filed a gift tax return, and eventually paid taxes and interest of $315,298.00 to the Internal Revenue Service. Plaintiff later

claimed the gift tax computation was incorrect.

On January 10, 1981, the Illinois Circuit Court of the Seventh Judicial Circuit construed the will as a joint and mutual will. The Circuit Court held that the will established a contractual obligation that restricted Grace Pyle from alienating, transferring, conveying or disposing of any of her property. Plaintiff could utilize the income or any corpus for her health, support, comfort and maintenance requirements. Accordingly, Grace Pyle appears to have retained a life estate and the power to invade the corpus for her health, support, comfort and maintenance. The Circuit Court later noted that Plaintiff had the right to use all the assets, if necessary, for her maintenance, support, comfort or health. The Government argues that Grace Pyle made a gift of property when the joint will became irrevocable at the time of Homer Pyle's death. It contends Grace Pyle had only a life estate in her property at that time, and that a gift of the remainder interest was made to the donee's named as beneficiaries in the will. Both parties have filed motions for judgment on the pleadings or in the alternative summary judgment.

■ The focal point of this case is Grace Pyle's power to invade the corpus for her health, support, comfort and maintenance. If this power renders the gift of the remainder incomplete, the gift tax was inappropriate. A retained power renders a gift incomplete when it is not limited or ascertainable. 26 C.F.R. 25.2511(g)(2).

■ It is without question that state law controls Grace Pyle's ability to invade the corpus. Neither party has cited Illinois cases concerning the meaning of health, support, comfort and maintenance, and there appears to be a paucity of Illinois law in this area. From a purely grammatical standpoint, it can be presumed that the addition of the word comfort expands the life tenant's ability to invade the corpus. The extent of this expansion, however, is subject to varying interpretations. This Court located several Illinois cases interpreting the word comfort as it relates to a life tenant's ability to invade corpus. *See, e.g., Rock Island Bank and Trust Co. v. Rhoads*, 353 Ill. 131, 187 N.E. 139 (1933). In *Rhoads*, a testator had made the following disposition of a portion of his property:

All the rest, residue and remainder of my estate, both real, personal and mixed and wheresoever situate, I give, devise and bequeath unto well-beloved wife, Mary E. Robinson to have an to hold the same unto her for and during her natural life, with full authority to use and dispose of so much of the same as may in her judgment be necessary for her *comfort and satisfaction* in life.

*Id.* at 132, 187 N.E. 139 (emphasis supplied). The court held that Robinson had an unlimited discretion to invade the corpus. While the language in *Rhoads* is slightly different than that employed in this case, the difference should not effect the substantive rights of the life tenant. Grace Pyle had the right to invade corpus for her health, support, maintenance and comfort. Only Grace Pyle could determine what was necessary for her comfort. There is no indication in any of the documents filed in this Court that Grace Pyle had to exhaust specific assets before she could invade the corpus for her comfort and support. *Nielsen v. Duyvejonck*, 94 Ill.App.2d 224, 236 N.E.2d 743 (3d Dist. 1968). As long as Grace Pyle determined the assets were necessary for her comfort she could use them. Obviously this use could consume the corpus in its entirety.

Federal courts, of various jurisdictions, have held against the government under substantially similar circumstances. Comfort embraces a variety of activities, properties and expenditures. It is not limited to the bare essentials of life, but includes purchases that bring ease, contentment and enjoyment. *Doyle v. United States*, 358 F.Supp. 300, 309 (E.D.Pa.1973). Where comfort is used as a standard for the invasion of corpus, it is not construed merely as the ability to invade the corpus for maintenance and support. Under these circumstances, invasion is allowed for the benefi-

ciary's "contentment or enjoy." *Id.* at 309–10. *See also, Lehman v. United States,* 448 F.2d 1318 (5th Cir.1971).

The facts of this case are similar to *Hambleton v. Commissioner,* 60 T.C. 558 (1973). In *Hambleton,* Charles and Sallie Hambleton had executed a joint and mutual will disposing of both parties' property. The survivor agreed to bequeath all of their property to a trustee, who was to pay the survivor the income and such principal as necessary to maintain and support the survivor. The tax court held that the transfer was not a taxable gift, but was only a transfer of her bare legal title which did not result in the relinquishment of any rights to the property. The tax court further noted that a will speaks only at the time of the testator's death. Thus, Sallie Hambleton's property would pass under the joint will when it was probated as her testament. *Id.* at 563.

Accordingly, the Court finds for Plaintiff and against the United States. The United States is ordered to refund $315,298, plus interest, to Plaintiff.